UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA,

v.                                                    CASE NO. 6:18-cr-131-Orl-41KRS

DEEPAK DESHPANDE.

_____/

## MOTION TO WITHDRAW GUILTY PLEAS

Defendant, **DEEPAK DESHPANDE**, by and through the undersigned counsel, and pursuant to Fed. R. Crim. P. 11(d)(2)(B), respectfully moves this Court to withdraw the guilty pleas he entered on October 29, 2018.  As grounds for this motion, Mr. Deshpande states:

1. On or about June 6, 2018, a grand jury indicted Mr. Deshpande for the charges of receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2) (Count 1), production of child pornography in violation of 18 U.S.C. § 2251(a) (Count 2), and two counts of  knowingly using means of interstate commerce to persuade, induce, entice, or coerce a minor, to engage in sexual activity in violation of 18 U.S.C. § 2422(b) (Counts 3 and 4).  (Doc. No. 8).

2. From May 22, 2018 until June 11, 2018, Mr. Deshpande was represented by David Joffe, Esq.  (Doc. No. 7).  From June 11, 2018 until December 13, 2018, Mr. Deshpande was represented by Mark O'Brien, Esq. and/or Victoria Hatfield, Esq. (hereinafter O'Brien & Hatfield).  (Doc. Nos. 17, 19 & 32).

3. On October 29, 2018, and pursuant to a plea agreement, Mr. Deshpande entered guilty pleas to Count 2 of the Indictment (production of child pornography in violation of 18 U.S.C. §

2251) and Count 3 of the Indictment (enticement of a minor to engage in illegal sexual activity in violation of 18 U.S.C. § 2422(b)). (Doc. Nos. 38–39).

4.      In late November, 2018 through December 11, 2018, a series of documents were filed. (Doc. Nos. 44–48). One of these was O'Brien & Hatfield's motion to withdraw after the entry of Mr. Deshpande's guilty pleas, but before his sentencing hearing. Because of evidence of a murder-for-hire plot the United States disclosed after the plea hearing, sometime in between October 29, 2018 and November 29, 2018, a conflict-of-interest developed between Mr. Deshpande and O'Brien & Hatfield. At some point during this time period, and continuing until undersigned counsel's appointment as CJA counsel, Mr. Deshpande was essentially without counsel. For instance, in its original preliminary PSR[1], Probation wrote that it "was unable to interview the defendant because defense counsel on record advised that he had to withdraw from the case and can no longer represent the defendant." (Doc. No. 50 at ¶ 84).

5.      On December 13, 2018, after conducting sealed proceedings on O'Brien & Hatfield's motion to withdraw, Judge Spaulding granted the request to withdraw and appointed the undersigned as CJA counsel.

6.      As mentioned above, sometime in between the entry of the guilty pleas and Mr. O'Brien's motion to withdraw, the government disclosed evidence that Mr. Deshpande had been engaged in a "murder-for-hire" plot to kill the minor accusing witness in the present matter. Mr. Deshpande disputes these allegations and was unaware of the existence of this investigation

---

[1] Filed on December 11, 2018.

when he entered his guilty pleas on October 29, 2018.  The United States now alleges that the allegations set forth in this murder-for-hire discovery warrants a two-level increase for obstruction of justice.  *See* USSG § 3C1.1.

7.      As for plea negotiations in this case, first Mr. Joffe, then Mr. O'Brien negotiated multiple plea agreements on Mr. Desphande's behalf (one with Mr. Joffe, and two with Mr. O'Brien).  Mr. Deshpande entered the third of these plea agreements on October 29, 2018.  (Doc. No. 64 at 8).

8.      During the plea hearing, Mr. Deshpande acknowledged that he initialed each page of the plea agreement (including the factual basis) (Doc. No. 38), signed the agreement, and that he "had the opportunity to read and understand this agreement with the advice of [his] attorney." (Doc. No. 68 at 5, 6).  Mr. Deshpande also told this Court that he did not need additional time to review the plea agreement with his attorney.  (Doc. No. 68 at 5).

9.      In the present motion, however, Mr. Deshpande contends that never actually read the agreement.  Instead, Mr. Deshpande contends that Mr. O'Brien visited him in jail on October 26, 2018.  During this interview, according to Mr. Deshpande, he and Mr. O'Brien discussed the substantial assistance provisions of the agreement, and Mr. O'Brien told Mr. Deshpande that he would receive either probation or house arrest (and maybe deportation) in exchange for his assistance to Special Counsel Robert Mueller's investigation into Russian interference with the 2016 presidential election.  Mr. Deshpande contends that, during this conversation, Mr. O'Brien

3

also fixated on the media coverage he and his law firm would likely receive if Mr. Deshpande became involved in the Special Counsel's investigation.

10.     According to Mr. Deshpande, who is as a skilled computer security expert, Mr. Deshpande had access to information that would be valuable to the Special Counsel's investigation.  Mr. Deshpande contends that, prior to entering the plea on October 29, 2018, Mr. O'Brien told him that he had contacted the Special Counsel's Office and that he could arrange a proffer directly with them.  According to Mr. Desphande, Mr. O'Brien went so far as to hire an independent computer forensics expert to confirm that Mr. Deshpande could plausibly have access to this information.  In was in this context, claims Mr. Deshpande, that Mr. O'Brien told him that his assistance to the Special Counsel would be so substantial that he would only receive probation or house arrest (maybe deportation) for the charges to which he pled guilty on October 29, 2018.

11.     It was also in this context, claims Mr. Deshpande, that Mr. O'Brien told him to sign the plea agreement without reading it.  According to Mr. Deshpande, on October 26, 2018, instead of giving him time to read the agreement, Mr. O'Brien told Mr. Deshpande "Deepak, just sign this." According to Mr. Deshpande, Mr. O'Brien told him that he had to sign the plea agreement in order to proffer with the Special Counsel's Office. Also, according to Mr. Deshpande, Mr. O'Brien told him that he would have until November 6, 2018 to withdraw his plea and that they just needed to sign the plea agreement in order to "stop the investigation."  Ultimately, Mr. Deshpande claims that he signed the plea agreement without reading it because Mr. O'Brien assured him that he would be released from custody after he pled guilty.

4

12.     Mr. Deshpande also claims that Mr. O'Brien never explained to him how the sentencing guidelines might apply in his case and the likely sentence he would receive.  Specifically, Mr. O'Brien never told him that, based on the charges to which he pled and the facts contained in the plea agreement's factual basis (Doc. No. 38 at 27–32), the district court would likely calculate a substantially high guidelines range.  Instead, as Mr. Deshpande claims, Mr. O'Brien simply assured him he would get out of jail if he entered the plea and he would receive a non-incarceration sentence in exchange for his assistance in the Special Counsel's investigation.  Mr. Deshpande claims that Mr. O'Brien told him the government would file a § 5K1.1 motion and an 18 U.S.C. § 3553(e) motion, which would result in a non-incarceration sentence, and maybe deportation "at the worst."  In this context, Mr. Deshpande claims that Mr. O'Brien characterized the signing of the plea agreement as something of a formality that could be undone any time before November 6, 2018, but was necessary to commence the substantial assistance that would lead to Mr. Deshpande's immediate release and ultimate non-incarceration sentence.

13.     Mr. Deshpande claims that, on November 10, 2018 he told Mr. O'Brien that he wanted to withdraw his guilty pleas.  Mr. Deshpande claims that Mr. O'Brien refused to continue to represent him in any capacity unless Mr. Deshpande admitted his involvement in the murder-for-hire investigation disclosed to Mr. O'Brien and Mr. Deshpande after the plea hearing on October 29, 2018.

14.     As early as January 23, 2019, Mr. Deshpande broached the subject of withdrawing his plea with undersigned counsel.  Undersigned counsel told Mr. Deshpande that undersigned needed to finish his review of this case before the undersigned was in a position assess the merits

of such a motion and to advise Mr. Deshpande of the probable consequences of filing a motion to withdraw his pleas.

15.     Between December 2018 and February 2019, undersigned counsel conducted a general investigation of the case, which included multiple meetings with Mr. Deshpande, a complete review of both the "murder-for-hire" discovery and the discovery produced in connection with the present criminal charges. The undersigned counsel also participated in the presentence investigation and, on February 15, 2019, tendered Mr. Deshpande's Position of the Parties Statement and lengthy objections to the preliminary PSR.  In order to complete the present motion, undersigned counsel then ordered a copy of the plea hearing transcript on February 22, 2018.  On February 25, 2019, the undersigned filed a motion to continue the March 14, 2019 sentencing hearing, partly to obtain more time to file the present motion.  (Doc. No. 61).

16.     In its Response in Opposition to Mr. Deshpande's motion to continue, the United States argued that Mr. Deshpande

> he has had two-and-a-half months to review discovery and consult with his new attorney to prepare for sentencing. He has had ample opportunity to make whatever motions he deems necessary and appropriate, and to do something as simple as ordering an expedited transcript of the change-of-plea hearing.

(Doc. No. 62 at 2).  However, the United States also acknowledged that the discovery related just to the substantive case "is indeed voluminous."[2]  (Doc. No 62 at 2).  And, as has been previously noted, the United States supplemented this "voluminous" substantive discovery with a separate

---

[2] For example, the United States tendered 13 discovery letters, just on the substantive case.

6

cache of evidence relating to what the United States claims was a foiled murder-for-hire plot involving Mr. Deshpande.

17.     Inasmuch as the United States is implying that undersigned counsel should have been able to be fully prepared for sentencing, review the discovery, file and litigate the present motion to withdraw plea, and perform all the other sundry tasks required of defense counsel within 2.5 months, it should be noted that counsel for the United States has been continuously involved in this case since at least June 8, 2018 (Doc. 10).  By contrast, the Undersigned was appointed— after what can be fairly described as an extraordinary and complicated set of circumstances leading to Mr. O'Brien's withdrawal—on December 13, 2018.  As such, it is somewhat disingenuous for a party who has had the uninterrupted services of the same attorney for almost nine months to quibble with the rate of progress undersigned counsel has made in less than one third of that time.[3]

Wherefore, for the reasons stated above, and in the memorandum of law that accompanies this motion, Mr. Deshpande has demonstrated "a fair and just reason" to withdraw his guilty pleas.  As such, Mr. Deshpande respectfully requests that this court enter an order granting leave to withdraw his guilty pleas, schedule a jury trial at its earliest convenience, and grant any other relief it deems proper.

## Certificate of Service

---

[3]  It should not be controversial that undersigned counsel has also had other matters to attend to since he was appointed to represent Mr. Deshpande.  For instance, undersigned counsel filed a 12,481-word brief in the Eleventh Circuit on January 18, 2019.

7

I hereby certify that on March 7 2018, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.

Respectfully submitted,

By: /s/Sean M. Wagner
Sean M. Wagner
Florida Bar No. 14042
Wagner & Wagner, P.A.
Attorney for Deepak Deshpande
1900 S. Harbor City Blvd., Suite 124
Melbourne, FL 32901
Telephone: (321) 433-0737
Fax: (800) 516-8243
E-mail: swagner@wagner-wagner.net

## Memorandum of Law

Mr. Deshpande bears the burden to "show a fair and just reason" to withdraw his guilty pleas. Fed. R. Crim. P. 11(d)(2)(B).

> In determining whether [Mr. Deshpande] has met this burden, the district court may consider the totality of the circumstances surrounding the plea . . . [f]actors analyzed include (1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved . . . and (4) whether the government would be prejudiced if the defendant were allowed to withdraw his plea.

*United States v. Buckles*, 843 F.2d 469, 471–72 (11th Cir. 1988); *accord United States v. Brehm*, 442 F.3d 1291, 1298 (11th Cir. 2006). Additionally, "[t]he longer the delay between the entry of the plea and the motion to withdraw it, the more substantial the reasons must be as to why the defendant seeks withdrawal." *Buckles*, 843 F.2d at 473; *accord United States v. Gonzalez-Mercado*, 808 F.2d 796, 801 (11th Cir. 1987).

8

While Mr. Deshpande does not possess an "absolute right to withdraw [his] guilty plea[s] prior to imposition of [] sentence," "the [r]ule . . . concerning pre-sentence motions to withdraw . . . is to be liberally construed." *Id* at 471.  Additionally, "[t]he good faith, credibility and weight of [Mr. Deshpande's] assertions in support of a motion under Rule [11(d)] are issues for the trial court to decide" and "[t]he decision to allow withdrawal is left to the sound discretion of the trial court." *Id.* at 471–472.

## A.  <u>Whether Close Assistance of Counsel was Available.</u>

"In assessing whether close assistance of counsel was available through plea proceedings, we examine whether counsel was available and utilized, as well as whether counsel performed adequately." *United States v. Wiggins*, 666 F. App'x 850, 855 (11th Cir. 2016)[4].

During the plea hearing on October 29, 2018, Mr. O'Brien appeared on behalf of Mr. Deshpande.  (Doc. No. 64 at 2).  This appears to be before Mr. O'Brien raised any concern with the court that he had a conflict of interest that prevented him from continuing to serve as counsel. (Doc. Nos. 44–48).  Moreover, during the plea hearing, Mr. O'Brien told this Court:

> [t]his is the third plea agreement that has been tendered to Mr. Deshpande. There was a plea agreement tendered to him with a previous lawyer. There was a second plea agreement tendered to him with me as his lawyer, which I, of course, provided to him and went over it with him.
>
> And this is the third plea agreement. This plea agreement was offered to my office, I believe -- Ms. Chang can correct me if I'm wrong, but I think it was early last week.  I asked for an extension in the number of days I had to go over this with my client because I

---

[4] All cases cited herein from the Federal Appendix are "unpublished" as the term is used in Federal Rule of Appellate Procedure 32.1(a).

9

> was out of state.
>
> We went over this plea agreement together last week at the Orange County Jail. I then tendered it to the prosecutor on Friday morning, and it was later provided to the Court. I came early today, went over the plea agreement with him again at the U.S. Marshal's Office. And then briefly we went over it before court started, while we were sitting in the courtroom, specifically to point out that that was the original plea agreement with his initials and signature on the appropriate pages.

(Doc. No. 64 at 8).  A bit earlier in the proceeding, Mr. Deshpande acknowledged that he initialed each page of the plea agreement (Doc. No. 38), signed the agreement, and that he "had the opportunity to read and understand this agreement with the advice of [his] attorney."  (Doc. No. 68 at 5, 6).  Mr. Deshpande also told this Court that he did not need additional time to review the plea agreement with his attorney.  (Doc. No. 68 at 5).  Mr. Deshpande also acknowledged that he "had a chance to go over" with his attorney the fact that the plea agreement omitted any recommendation regarding a guideline reduction for acceptance of responsibility and omitted any recommendation at to a particular sentence.  (Doc. No. 68 at 7).

Just before entering his guilty pleas, Mr. Deshpande acknowledged that he "had a chance to review [the Indictment] with Mr. O'Brien."  (Doc. No. 68 at 10–11).  After entering the pleas, Mr. Deshpande acknowledged that he had "had enough time to talk to Mr. O'Brien about [his] case" and that he was generally satisfied with Mr. O'Brien's representation.  (Doc. No. 68 at 12). Finally, Mr. Deshpande acknowledged that he had "discussed the federal advisory sentencing guidelines with Mr. O'Brien."  (Doc. No. 68 at 13).

In light of the foregoing, Mr. Deshpande concedes that Mr. O'Brien was "available and utilized" during plea proceedings.  *See Wiggins*, 666 F. App'x at 855.

10

However, for the reasons stated in section B, *infra*, Mr. Deshpande disputes that his "counsel performed adequately" during the proceedings.  *Id.*

## B.  **Whether the Plea was Knowing and Voluntary.**

> a guilty plea is knowing and voluntary if it satisfies the three core concerns underlying Fed.R.Crim.P. 11, which are that: "(1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea."

*United States v. Darville*, 423 F. App'x 939, 941 (11th Cir. 2011) (*quoting United States v. Mosley*, 173 F.3d 1318, 1322 (11th Cir. 1999)); *accord United States v. McFarland*, 719 F. App'x 908, 912 (11th Cir. 2017).

Mr. Deshpande concedes that this Court's plea colloquy satisfied the first and second of these core concerns.  (Doc. No. 64 at 12, 3–5).  However, the colloquy did not satisfy the third: Mr. Deshpande did not know and understand the consequences of his guilty plea.  Additionally, Mr. Deshpande contends that Mr. O'Brien rendered ineffective assistance of counsel in connection with Mr. Deshpande's guilty pleas.

1.  <u>Mr. Deshpande Did not Understand the Consequences of His Guilty Pleas</u>.

During the plea hearing, this Court asked Mr. Deshpande: "[h]ave you discussed the federal advisory sentencing guidelines with Mr. O'Brien?" Mr. Deshpande answered "[y]es, sir." (Doc. No. 64 at 12–13).  Additionally, this Court asked Mr. Deshpande "[d]o you understand that they will not be calculated until sentencing and that they're not binding on the Court?"  Again, Mr. Deshpande answered "[y]es, sir."

Federal Rule of Criminal Procedure 11(b)(1)(M) requires that a district court

11

> inform the defendant of, and determine that the defendant understands . . . the court's obligation to calculate the applicable sentencing-guideline range and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a).

As a technical matter, this Court did not strictly comply with Rule 11(b)(1)(M).  This Court did not inform Mr. Deshpande that it was the court's obligation to calculate his guideline range, or that it was the court's obligation to consider that range and any possible departures under the guidelines and the other sentencing factor set forth in 18 U.S.C. § 3553(a).  However, the Eleventh Circuit has held that variance from the strictures of Rule 11 constitutes harmless error so long as it does not affect a defendant's "substantial rights."  *United States v. Jones*, 143 F.3d 1417, 1419 (11th Cir. 1998).  In this context, "[w]here the court elicits that a defendant is aware of the Guidelines, and that the defendant has discussed the effect of the Guidelines with his attorney, Rule 11 compliance has occurred."  *United States v. Simpson*, 154 F. App'x 860, 861 (11th Cir. 2005); *accord Mosley*, 173 F.3d at 1328 ("[i]n this case, the district judge elicited from Mosley at the plea proceeding that he knew about the Sentencing Guidelines and that he had discussed the effect of the Sentencing Guidelines on his sentence with his attorney.")    As such, the question to be answered is not whether this Court strictly complied with Rule 11(b)(1)(M), but whether this Court elicited enough information from Mr. Deshpande about the guidelines to ensure he knew and understood *the effect the sentencing guidelines would have on his sentence*.

There is no question that this Court elicited from Mr. Deshpande that he was aware of the guidelines and that he discussed them with his attorney.  (Doc. No. 64 at 12–13).  However, this

12

Court did not elicit from Mr. Deshpande that he "had discussed *the effect of the Sentencing Guidelines on his sentence* with his attorney." *Mosley*, 173 F.3d at1328. (emphasis added).

This is an important distinction. Mr. Deshpande claims that his lawyer failed to inform him that one of the likely consequences of his pleas would be a severely high guidelines range if he entered into the plea agreement and stipulated to the factual basis contained therein. (Doc. No. 38 at 27–32). Instead, Mr. Deshpande claims that hist attorney never discussed this aspect of his sentence, but instead assured him that he would receive house arrest, probation, or, at worst, be deported in exchange for his assistance to the Special Counsel's investigation. Had the court inquired about whether Mr. Deshpande had discussed with Mr. O'Brien *the effect the Sentencing Guidelines might have on his sentence*, there would be no question whether knew and understood this important consequence of his guilty pleas.

2. Mr. O'Brien did not Provide Reasonably Effective Assistance of Counsel in Connection with Mr. Deshpande's Guilty Pleas.

"The guilty plea is not knowingly and voluntarily waived . . . if the defendant does not receive reasonably effective assistance of counsel in connection with the decision to plead guilty." *McCoy v. Wainwright*, 804 F.2d 1196, 1198 (11th Cir. 1986); *accord United States v. McFarland*, 719 F. App'x 908, 913 (11th Cir. 2017) ( "we have explained that a guilty plea is not knowing and voluntary if the defendant did not receive "reasonably effective assistance of counsel in connection with [his] decision to plead guilty.") Additionally, this Court must apply the *Strickland* analysis[5] in determining this question. *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.

---

[5]  *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Ct. 366, 370, 88 L. Ed. 2d 203 (1985) ("[w]e hold, therefore, that the two-part *Strickland v.*

*Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel).

> [t]he Supreme Court has articulated a two-prong test for determining whether a litigant has been denied effective assistance of counsel . . . [f]irst, the defendant must show that counsel's performance fell below a threshold level of competence. Second, the defendant must show that counsel's errors due to deficient performance prejudiced his defense such that the reliability of the result is undermined.

*Tafero v. Wainwright*, 796 F.2d 1314, 1319 (11th Cir. 1986).

    a.  <u>Deficient Performance</u>.

> The first prong—constitutional deficiency—is necessarily linked to the practice and expectations of the legal community: "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." We long have recognized that "[p]revailing norms of practice as reflected in American Bar Association standards and the like ... are guides to determining what is reasonable ... ."

*Padilla v. Kentucky*, 559 U.S. 356, 366, 130 S. Ct. 1473, 1482, 176 L. Ed. 2d 284 (2010)

(internal citations omitted).

    ABA Criminal Justice Standards for the Defense Function, Standard 4-5.1

states in relevant part:

> (a) After informing himself or herself fully on the facts and the law, defense counsel should advise the accused with complete candor concerning all aspects of the case, including a candid estimate of the probable outcome.
> (b) Defense counsel should not intentionally understate or overstate the risks, hazards, or prospects of the case to exert undue influence on the accused's decision as to his or her plea.

---

According to Mr. Deshpande's present contentions, Mr. O'Brien fell short of this standard in several respects.  Firstly, Mr. O'Brien failed to advise Mr. Deshpande "with complete candor concerning . . . the probable outcome" of his sentencing hearing.  Instead, according to Mr Deshpande, Mr. O'Brien made the rather outlandish claim that Mr. Deshpande would receive house arrest, probation, or, at worst, would be deported for the crimes of production of child pornography in violation of 18 U.S.C. § 2251(a) (15 to 30 years) and knowingly using means of interstate commerce to persuade, induce, entice, or coerce a minor, to engage in sexual activity in violation of 18 U.S.C. § 2422(b) (10 years to life).  Absent an extraordinary and credible overture from a representative of the United States, this advice would certainly be unreasonable in light of the core allegations in this case that Mr. Deshpande repeatedly extorted a minor to have sex with him against her will.

Secondly, Mr. O'Brien "intentionally understated . . . the risks, hazards, or prospects of the case to exert undue influence on [Mr. Deshpande's] decision as to his . . . plea."  According to Mr. Deshpande, Mr. O'Brien told him just to sign the plea agreement instead of reading it and discussing the full implication of the charges (including this Court's likely calculation of the guidelines based on the plea agreement's factual basis) in order to convince him to enter the plea. If this Court accepts Mr. Deshpande's allegation that Mr. O'Brien was uniquely interested in the media attention that he and his law firm would receive if Mr. Deshpande entered the plea and cooperated with the Special Counsel, it would not be unreasonable to then infer that Mr. O'Brien's advice was tainted by a desire to become involved in an investigation of national import.  Whatever the motivation, it would certainly be unreasonable for an attorney to advise his client to sign a plea agreement without reading it in order to begin cooperating with the

15

government in any capacity, especially when, by entering the plea, Mr. Deshpande was placing himself in peril of receiving an extraordinarily long guidelines sentence.

While Mr. Deshpande's claim that Mr. O'Brien told him that he would be released from jail and receive a non-incarceration sentence in exchange for cooperation with the Special Counsel's Office may see outlandish at first glance, it is worth pointing out that the following exchange between this Court and Mr. O'Brien at the very end of the plea hearing:

> THE COURT: Anything, Mr. O'Brien, from the defense?
> MR. O'BRIEN: One matter, Judge.
> THE COURT: Sure.
> MR. O'BRIEN: There is the potential for the defense to request a continuance of sentencing based on the provisions contained in this plea agreement. Should I do that, Judge, I likely will file a motion to file that pleading under seal. I just want to bring that to the Court's attention.
> THE COURT: And I appreciate you letting me know that. That's pretty standard, and I don't think that's going to present a problem or a challenge to the Court. So I'll expect to see you on January 16th, unless you file something otherwise.

(Doc. No. 64 at 8). While it would be pure speculation to argue that Mr. O'Brien was referring to requesting a continuance in order to work with the Special Counsel's Office, the facts that Mr. O'Brien referenced filing the motion under seal, and referenced requesting a continuance "based on the provision contained in this plea agreement," may warrant an evidentiary hearing on this question.

b. Prejudice.

"To establish prejudice in the context of a challenged guilty plea, a defendant must show that, but for his counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *United States v. McFarland*, 719 F. App'x 908, 913 (11th Cir. 2017).

16

Mr. Deshpande asserts that he would not have pleaded guilty and would have insisted on going to trial but for the misadvice he claims he received from Mr. O'Brien. Firstly, unless there was any truth to the claims about cooperating with the Special Counsel's Office, Mr. Deshpande had relatively little to gain by entering the plea agreement. And, he waived his right to appeal and other important rights by doing so. Secondly, notwithstanding the government's characterization of the strength of the evidence of Mr. Deshpande's guilt, this case is largely circumstantial. For instance, there is no direct evidence establishing that he was the person who used a computer to persuade, induce, entice, or coerce the minor accusing witness to engage in sexual activity. Likewise, there is no direct evidence that Mr. Deshpande was the person who used a computer to produce child pornography. On this point, Mr. Deshpande asserts his innocence: he claims that other individuals referred to in the discovery as "Roger" and "Devin" were the ones who used a computer in this manner.

**C. <u>Whether Judicial Resources would be Conserved</u>.**

While it is not likely that judicial resources will be conserved *at the trial level*, granting the present motion will likely prevent post-conviction litigation related to the circumstances surrounding the October 29, 2018 guilty pleas. *See Jimenez-Castillo v. United States*, No. 1:07-CR-0279-CAP-43, 2011 WL 13196274, at *3 (N.D. Ga. Feb. 1, 2011) ("[a]n appeal waiver, such as entered into by Movant, does not preclude a defendant from filing a § 2255 motion to challenge counsel's effectiveness in regard to the validity of a plea and/or an appeal waiver.") As such, there is a strong likelihood that granting this motion will, on the whole, conserve the resources of the judiciary.

**D. <u>Whether the Government Would Be Prejudiced if the Defendant Were</u>**

17

**Allowed to Withdraw his Plea.**

Other than the impact on the minor accusing witness (Doc. No. 62), the United States has yet to articulate how it would be prejudiced by allowing Mr. Deshpande to withdraw his plea and submit the question of his guilt to a jury.

Importantly, the United States has not alleged that it would be at any *procedural* disadvantage that would make it more difficult to prove its case to a jury if this Court grants the present motion. *See e.g. Brehm*, 442 F.3d at 1297 ("[f]inally, the court noted the government's argument that it would be prejudiced by the withdrawal because the plea had been taken more than eight months previously and the government had 'limited its investigation to establish[ing] [Brehm's] guilt.' ").

The accusing witness resides in the Middle District of Florida, the United States remains in possession of the physical evidence it would use at trial, and most of its other witnesses are federal law enforcement agents. Moreover, most important of these witnesses are (presumably) available to testify during the scheduled sentencing hearing on March 14, 2019. Thus, a trial date set at this Court's earliest convince would probably impose little more procedural burden on the United States than would proceeding with the sentencing hearing next week.

E. **The Delay Between the Entry of the Plea and the Motion to Withdraw.**

In a normal case, a four-month delay should warrant close and skeptical scrutiny. However, Mr. Deshpande claims he asked Mr. O'Brien to file a motion to withdraw the plea on November 10, 2018, (12 days after the plea hearing), but that Mr. O'Brien did not file the motion. He also requested that the undersigned counsel file the motion in January of 2019.

18

Under the totality of the circumstances, the delay in filing this motion is excusable.  Mr. O'Brien withdrew because he had a conflict of interest, which is presumably why he did not file the motion in November.  Undersigned counsel—appointed after the extraordinary instance of prior counsel withdrawing due to his client's alleged involvement in a murder-for-hire plot—worked diligently to evaluate the evidence and the law between the time Mr. Deshpande requested filing this motion and actual filing it.

The filing of a motion to withdraw plea comes with the potential for serious consequences to a criminal defendant, and thus warrants counsel's exercise of prudence and due diligence before filing it.  *See* ABA Criminal Justice Standards for the Defense Function, Standard 4-1.3(e) (defense counsel assumes "a duty to be well-informed regarding the legal options and developments that can affect a client's interests during a criminal representation"; *see* ABA Criminal Justice Standards for the Defense Function, Standard 4-1.3(f) (defense counsel assumes "a duty to continually evaluate the impact that each decision or action may have at later stages, including trial, sentencing, and post-conviction review"); *see* ABA Criminal Justice Standards for the Defense Function, Standard 4-3.7(b)  ("[d]efense counsel should promptly seek to obtain and review all information relevant to the criminal matter, including but not limited to requesting materials from the prosecution"); *see* ABA Criminal Justice Standards for the Defense Function, Standard 4-4.1(a)  ("Defense counsel has a duty to investigate in all cases").

Therefore, under the totality of the facts surrounding this somewhat unique situation, the four-month delay in filing the present motion does not militate against granting the present

19

motion.

Respectfully Submitted,

/s/ Sean M. Wagner,

Counsel for Mr. Deshpande