UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.   CASE NO. 6:18-cr-131-Orl-41LRH

DEEPAK DESHPANDE

**UNITED STATES' OPPOSITION TO DEFENDANT'S
MOTION TO WITHDRAW GUILTY PLEAS**

The United States opposes the defendant's motion to withdraw his guilty pleas because they were knowing and voluntary, as amply demonstrated by his signed and initialed plea agreement and his plea colloquy on October 29, 2018. Moreover, the totality of the circumstances—including the timing of this motion (made more than four months after the pleas) and the fact that withdrawal would severely prejudice and further traumatize the minor victim in this case—warrant denial of the defendant's motion.

**PROCEDURAL HISTORY**

On June 6, 2018, a federal grand jury returned a four-count indictment, charging the defendant with receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2); production and attempted production of child pornography, in violation of 18 U.S.C. § 2251(a); and enticement and attempted enticement of a minor to engage in unlawful sexual activity, in

1

violation of 18 U.S.C. § 2422(b).  Count Four (attempted enticement) is based on the defendant's enticement of someone whom he believed to be the minor victim—but was in fact an undercover FBI agent.  (Doc. 8.)

On October 29, 2018, the defendant pled guilty before this Court to production of child pornography and enticement of a minor to engage in unlawful sexual activity, pursuant to a plea agreement.  (Docs. 38-39, 64.) During his plea colloquy, the defendant testified under oath and affirmed, among other things, that he: (a) understood the maximum penalties he faced; (b) had read and understood his plea agreement and reviewed it with his then-counsel, Mark O'Brien, Esq.; (c) had not received any promises apart from those in the plea agreement; (d) had discussed the Sentencing Guidelines with Mr. O'Brien; (e) was satisfied with Mr. O'Brien's counsel; and (f) did not disagree with the factual basis set forth on pages 27-32 of the plea agreement.[1] (Doc. 64.)

Sentencing was originally scheduled for January 16, 2019.  (Doc. 40.) The Court permitted Mr. O'Brien to withdraw as counsel and appointed new counsel in this case on December 13, 2018, and granted counsel's motion for a

---

[1] The defendant notes in his motion that at the time of his guilty plea, he was unaware that the United States was investigating the defendant's plot to hire someone to murder the minor victim before she could testify at his trial.  (Doc. 75 at 2.)  The defendant does not appear to argue—nor could he in good faith argue—that his ignorance as to that investigation has any bearing on whether the Court should allow him to withdraw his guilty pleas.

60-day continuance for sentencing, which is currently scheduled to occur on March 14, 2019. (Docs. 55-57.)

The defendant filed his instant motion on March 7, 2019, four months after his guilty pleas, and one week before sentencing. (Doc 75.)

## LEGAL STANDARD

Pursuant to Fed. R. Crim. P. 11(d)(2)(B), a defendant may withdraw a guilty plea upon showing a "fair and just reason for requesting the withdrawal," but "there is no absolute right to withdraw a guilty plea prior to imposition of a sentence." *United States v. Buckles*, 843 F.2d 469, 471 (11th Cir. 1988). "The decision to allow withdrawal is left to the sound discretion of the trial court." *Id.*

In determining whether the defendant has met his burden to show a "fair and just reason," the Court "may consider the totality of the circumstances surrounding the plea." *Id.* at 471–72. In the course of this inquiry, the Court considers "(1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved; and (4) whether the government would be prejudiced if the defendant were allowed to withdraw his plea." *United States v. Brehm*, 442 F.3d 1291, 1298 (11th Cir. 2006) (quoting *Buckles*, 843 F.2d at 472). Moreover, if a defendant does not satisfy the first two factors of

the *Buckles* analysis, the Court need not "give particular attention" to the remaining factors. *United States v. Gonzalez-Mercado*, 808 F.2d 796, 801 (11th Cir. 1987).

Statements made during the plea colloquy—declarations made under oath and in open court—carry a strong presumption of verity. *See United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994). "[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988). In the end, "[t]he good faith, credibility and weight of a defendant's assertions in support of a motion [to withdraw a guilty plea] are issues for the trial court to decide." *Buckles*, 843 F.2d at 472.

## ARGUMENT

### A. The Defendant's Pleas Were Knowing and Voluntary

"[T]here are three core principles that must be addressed by a court accepting a guilty plea: '(1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea.'" *United States v. Jones*, 143 F.3d 1417, 1418–19 (11th Cir. 1998) (quoting *United States v. Siegel,* 102 F.3d 477, 481 (11th Cir. 1996)). All three principles were satisfied

in this case.  Because the defendant concedes that the first two were present (Doc. 75 at 11), the United States will only address the third.

### 1. The Defendant Knew and Understood the Maximum Penalties

The record confirms that the defendant knew and understood the consequences of his guilty plea because those consequences could not have been more plainly stated at his hearing.  After informing the defendant of the elements of the offense of production of child pornography, the Court informed the defendant of the maximum penalties for that offense, including "a mandatory minimum of 15 years in prison up to the maximum of 30 years in prison."  (Doc. 64 at 4.)  Then, after outlining the elements of the offense of enticement of a minor, the Court told the defendant that the maximum penalties for that offense included "[a] mandatory minimum of ten years to life."[2]  (*Id.* at 5.)  The defendant affirmed that he heard and understood those maximum penalties.  (*Id.*)

Moreover, the same statutory penalties were set forth on pages 1 and 2 of the plea agreement, which the defendant initialed and signed.  (Doc. 38 at 1-2.)  *See Jones*, 143 F.3d at 1420 ("[W]e have consistently considered written plea agreements to be part of the record of the Rule 11 hearing.")  At the plea

---

[2] The plea agreement and the Court also advised the defendant of other ramifications of any guilty plea, including sex offender registration and immigration consequences.  (Doc. 38 at 15-16; Doc. 64 at 13.)

hearing, the defendant reaffirmed that his initials at the bottom of each page, and his signature at the end of the agreement indicated that he had had the opportunity to read and understand the agreement with the advice of his attorney. (Doc. 64 at 5-6.) When asked whether he needed more time to go over the agreement with Mr. O'Brien, the defendant responded, "No, sir." (*Id*. at 5.)

    2.    **The Defendant Knew and Understood the Effect of the Sentencing Guidelines**

The defendant's own motion belies his present claim of ignorance concerning the effect of the Guidelines on his sentence, namely that he would likely be subject to a "severely high guidelines range" if he pled guilty. He claims that "Mr. O'Brien never explained to him how the sentencing guidelines might apply in his case and the likely sentence he would receive." (Doc. 75 at 5.) He then faults the Court for failing to inquire about whether he had discussed with his attorney "the effect the Sentencing Guidelines might have on his sentence." (*Id*. at 13.)

This is puzzling, because the defendant further claims that "Mr. O'Brien told him the government would file a § 5K1.1 motion and an 18 U.S.C. § 3553(e) motion, which would result in a non-incarceration sentence, and maybe deportation 'at the worst.'" (*Id*. at 5.) The defendant was advised of the minimum mandatory penalties that applied to both counts of

6

his conviction, both in writing (plea agreement) and in Court (plea colloquy). And the defendant concedes his understanding that he was going to receive the benefit of a motion under USSG § 5K1.1 (i.e. a product of the Guidelines), which necessarily means he understood the effect of the Guidelines on his sentence. One cannot understand how a 5K1.1 motion works (which clearly this defendant does) if he does not also understand how the Guidelines work.

That the defendant understood the Guidelines is unsurprising, because the plea agreement also refers to the Court's determination of the applicable Guidelines range. (Doc. 38 at 20.) Moreover, at the plea hearing, the Court specifically highlighted the fact that the defendant's plea agreement contained "no language about a recommended three-point offense level reduction for acceptance of responsibility, nor is the Government committing to making a guideline recommendation." None of that should have made sense to the defendant, if indeed Mr. O'Brien never explained the effect of the Guidelines to him, but the defendant confirmed his understanding, and stated that he had had a chance to review that with his attorney. (*Id.* at 7.)

At that point, Mr. O'Brien recounted for the Court his history of reviewing the plea agreement with the defendant on three separate occasions, none of which the defendant objected to or disputed. (*Id.* at 8.) In addition, the Court elicited this testimony from the defendant:

> COURT: Do you understand that the terms of this plea agreement are merely recommendations and that I could reject those recommendations and sentence you up to the maximum penalty without allowing you to withdraw your plea once I accept your plea?
>
> Defendant: Yes, sir.
>
> COURT: Have you discussed the federal advisory sentencing guidelines with Mr. O'Brien?
>
> Defendant: Yes, sir.
>
> COURT: Do you understand that they will not be calculated until sentencing and that they're not binding on the Court?
>
> Defendant: Yes, sir.

(*Id*. at 12-13.)   Thus the Court adequately elicited testimony from the defendant to ensure that he was aware of the effect of the Guidelines on his sentence.

The defendant further claims that Mr. O'Brien never discussed how the Guidelines might affect his sentence, and instead "assured him that he would receive house arrest, probation, or, at worst, be deported in exchange for his assistance to the Special Counsel's investigation."   (Doc. 75 at 13.)

Again, the plea colloquy proves the contrary.   At the plea hearing, the defendant affirmed under oath that no other promises, other than those set forth in the plea agreement, had been made to him:

> COURT: Other than the plea agreement I've been advised of, have you been made any additional promises to get you to enter into the plea?
>
> Defendant: No, sir.
>
> COURT: Are you entering the plea freely and voluntarily because you believe it is in your best interest?
>
> Defendant: Yes, sir.
>
> COURT: Have you had enough time to talk to Mr. O'Brien about your case?
>
> Defendant: Yes, sir.
>
> COURT: Are you satisfied with his representation?
>
> Defendant: Yes, sir.

(Doc. 64 at 12.) The plea agreement says nothing about house arrest or probation. Only now—four months later—does the defendant claim, for the first time, that Mr. O'Brien promised him something else entirely.

But at the time, the defendant expressed no surprise when the Court advised him that he was subject to stiff minimum mandatory penalties and a maximum sentence of life. Moreover, the Court reiterated that "[i]f you provide substantial assistance pursuant to your plea agreement, the Government may seek further mitigation or leniency on your part, but per the terms of your plea agreement, you cannot challenge the Government's decision to either seek or not seek additional mitigation or leniency" (*id.* at 9),

9

meaning that whatever 5K1.1 motion he was hoping to receive was not a certainty. Yet the defendant did not hesitate, as one would have expected him to if Mr. O'Brien had in fact assured him that he would be sentenced to house arrest or probation.

### B. The Defendant Enjoyed Close Assistance of Competent Counsel

The defendant enjoyed the close assistance of counsel for purposes of his guilty plea. For the reasons set forth above in Section A, the defendant's present claims about Mr. O'Brien's purported failures as counsel are spurious at best.

The defendant reasons that he "would have insisted on going to trial but for the misadvice he claims he received from Mr. O'Brien" because he had little to gain by entering the plea agreement "unless there was any truth to the claims about cooperating with the Special Counsel's Office." (Doc. 75 at 17.) In other words, he would have gone to trial but for Mr. O'Brien's supposed promise that his assistance in the Mueller investigation would save him.

But notably, the defendant met with federal agents to proffer on January 30, 2019. During the investigation, federal agents had seized a wide array of digital devices from the defendant's home in California and luggage in Orlando. The government was unable to access most of those devices—and was therefore unable to determine the extent to which the defendant had

victimized other minors as he did in this case. At the proffer, the agents requested passwords and instructions on how to access the devices in order to test the defendant's veracity and willingness to cooperate. He refused at the outset, so the proffer ended almost as quickly as it began.

Moreover, the defendant claims that there is no direct evidence to establish his guilt with respect to Counts Two (production of child pornography) or Three (enticement of a minor). (Doc. 75 at 17.) That's not true; the minor victim in this case is able to provide direct evidence that he committed these offenses, as well as the offense charged in Count One (receipt of child pornography). Moreover, the defendant's guilt as to Count Four (attempted enticement) can be established through testimony of the undercover FBI agent who, posing as the minor victim, communicated with the defendant by email and by telephone, and later arrested the defendant when he (the defendant) traveled to Orlando to meet the minor victim.

## C. The Government Will be Prejudiced if the Court Grants the Defendant's Motion

The defendant contends that, "Other than the impact on the minor accusing witness, the United States has yet to articulate how it would be prejudiced" by allowing withdrawal of his plea. (Doc. 75 at 18.) The minor victim in this case is in high school. She experienced incredible emotional and physical trauma at the hands of this defendant for ten months before the

11

investigation began. Even after the defendant's arrest, when the trial was looming, the defendant attempted to hire people to kidnap and kill the minor victim so she would be unavailable at trial.

Should the Court grant the defendant's motion, the United States will have to explain to her and her family that she will have to testify at a trial even though he previously pleaded guilty. Her anticipated testimony would last several hours at least, and require her to relive—and recount before a jury—many of the most humiliating and degrading moments of her life. Allowing withdrawal of the defendant's plea will severely impact the minor victim. This factor weighs against permitting withdrawal of the plea. *See, e.g.*, *United States v. Prive*, No. 6:14–cr–33–Orl–28KRS, 2015 WL 500899 (M.D. Fla. Feb. 5, 2015) (Antoon, J.) (finding withdrawal of guilty plea would prejudice government given "sensitive nature" of enticement case involving minor victim, because government "would have to explain to members of the minor victim's family that they may have to testify at a trial even though the Defendant had previously pleaded guilty").

### D. The Timing of Defendant's Motion Weighs Against His Favor

The defendant moved to withdraw his guilty pleas *four months* after the fact (and just a week before sentencing). The defendant now claims that he communicated his desire to withdraw his guilty pleas on November 10, 2018,

and that Mr. O'Brien refused to assist in light of the circumstances surrounding his conflict of interest. (Doc. 75 at 5.) Yet, by the defendant's own admission, he did not "broach[] the subject of withdrawing his plea" (or Mr. O'Brien's purported failure to address it) with his new counsel until January 23, 2019, approximately six weeks after counsel was appointed. More than additional four weeks passed before the defendant actually filed his motion.

"The longer the delay between the entry of the plea and the motion to withdraw it, the more substantial the reasons must be as to why the defendant seeks withdrawal." *United States v. Buckles*, 843 F.2d 469, 473 (11th Cir. 1988). By any calculation, even one that assumes the defendant's alleged version of events, the timing of the defendant's motion to withdraw his guilty pleas indicates that he has "buyer's remorse," rather than a genuine, longstanding desire to withdraw his plea. This is compounded by the fact that his reasons for seeking withdrawal are unfounded, much less "substantial."

## CONCLUSION

Because the defendant's guilty pleas were knowing and voluntary, and in light of the totality of the circumstances—including the timing of this motion (made more than four months after the pleas), and the fact that

withdrawal would severely prejudice and further traumatize the minor victim in this case—the United States opposes the defendant's motion.

                    Respectfully submitted,

                    MARIA CHAPA LOPEZ
                    United States Attorney

By:    */s/ Emily C. L. Chang*
        EMILY C. L. CHANG
        Assistant United States Attorney
        USA No. 166
        400 W. Washington Street, Suite 3100
        Orlando, Florida 32801
        Telephone:  (407) 648-7500
        Facsimile:   (407) 648-7643
        E-mail:       emily.chang@usdoj.gov

U.S. v. DEEPAK DESHPANDE    Case No. 6:18-cr-131-Orl-41LRH

## CERTIFICATE OF SERVICE

I hereby certify that on March 8, 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Sean M. Wagner, Esquire

    */s/ Emily C. L. Chang*
    EMILY C. L. CHANG
    Assistant United States Attorney
    USA No. 166
    400 W. Washington Street, Suite 3100
    Orlando, Florida 32801
    Telephone:  (407) 648-7500
    Facsimile:   (407) 648-7643
    E-mail:
    emily.chang@usdoj.gov