UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**DEEPAK DESHPANDE,**

**Petitioner,**

**v.**                                        **Case No.  6:21-cv-671-CEM-LHP**
                                              **(6:18-cr-131-CEM-LHP)**

**UNITED STATES OF AMERICA,**

**Respondent.**

_____/

## ORDER

THIS CAUSE is before the Court on Petitioner Deepak Deshpande's Motion to Vacate, Set Aside, or Correct Sentence ("Motion to Vacate," Doc. 1) filed pursuant to 28 U.S.C. § 2255 and Memorandum in Support of Motion to Vacate ("Memorandum," Doc. 13). Respondent filed a Response to the Motion to Vacate ("Response," Doc. 17) in compliance with this Court's instructions. Petitioner filed a Reply to the Response ("Reply," Doc. 36).

Petitioner asserts eight grounds for relief. For the following reasons, the Motion to Vacate will be denied.

### I. PROCEDURAL HISTORY

A grand jury charged Petitioner with receipt of child pornography (Count One) in violation of 18 U.S.C. § 2252A(a)(2) and (b)(1), production and attempted production of child pornography (Count Two) in violation of 18 U.S.C. § 2251(a)

and (e), and two counts of actual and attempted sexual enticement of a minor (respectively Counts Three and Four) in violation of 18 U.S.C. § 2422(b). (Criminal Case, No. 6:18-cr-131-CEM-LHP, Doc. 8).[1] Pursuant to a plea agreement, Petitioner entered a plea of guilty to Counts Two and Three. (Criminal Case, Doc. Nos. 38, 64). Prior to sentencing, Petitioner filed a motion to withdraw the plea. (Criminal Case, Doc. 75). The Court denied the motion to withdraw the plea and sentenced Petitioner to a 360-month term of imprisonment for Count Two and to a life sentence for Count Three. (Criminal Case, Doc. Nos. 91, 99 at 3-12). The Court dismissed Counts One and Four. (Criminal Case, Doc. 91). Petitioner appealed, and the Eleventh Circuit Court of Appeals affirmed the convictions and sentences. (Criminal Case, Doc. 112). Petitioner filed a petition for writ of certiorari that was denied. (Criminal Case, Doc. 116).

Petitioner then filed the present Motion to Vacate. As the Court can resolve the Motion to Vacate on the basis of the record, an evidentiary hearing is not warranted.[2]

## II. LEGAL STANDARDS

### A. 28 U.S.C. § 2255

---

[1] Criminal Case No. 6:18-cr-131-CEM-LHP will be referred to as "Criminal Case."

[2] "A petitioner is entitled to an evidentiary hearing if he alleges facts that, if true, would entitle him to relief." *Rosin v. United States*, 786 F.3d 873, 877 (11th Cir. 2015) (citation and quotation omitted). The Court "is not required to grant a petitioner an evidentiary hearing if the § 2255 motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Id.* at 877 (citation and quotation omitted).

Section 2255 allows federal prisoners to obtain collateral relief under limited circumstances:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). To obtain relief, a petitioner must "clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982) (rejecting the plain error standard as not sufficiently deferential to a final judgment). If a claim is meritorious, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

**B.  Ineffective Assistance of Counsel**

The Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense. *Id*. at 687-88. The prejudice requirement of the *Strickland* inquiry is modified when the claim is a challenge to a guilty plea based on ineffective

assistance. *See Hill v. Lockhart*, <u>474 U.S. 52, 58-59</u> (1985). To satisfy the prejudice requirement in such claims, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

The standard for analyzing ineffective assistance claims is the same for trial and appellate counsel. *Matire v. Wainwright*, <u>811 F.2d 1430, 1435</u> (11th Cir.1987). Therefore, applying *Strickland* to claims of ineffective assistance of appellate counsel, a petitioner must demonstrate that appellate counsel's performance was deficient and that there is a reasonable probability that, but for counsel's deficient performance, he would have prevailed on appeal. *Shere v. Sec'y, Fla. Dep't of Corr.*, <u>537 F.3d 1304, 1310</u> (11th Cir. 2008) (citing *Smith v. Robbins*, <u>528 U.S. 259, 285–</u>86 (2000)).

### III.   ANALYSIS

#### A.  Grounds One through Seven

In Ground One, Petitioner complains about a variety of pre-plea issues: (1) the search warrant lacked material information and failed to establish probable cause, and thus, the search violated the Fourth Amendment, (2) the Government failed to obtain a warrant for the cellular site location of Petitioner's cell phone, (3) the Government lacked probable cause to arrest Petitioner, (4) the criminal complaint violated <u>Federal Rules of Criminal Procedure 4</u> and 5, and (5) the probable cause hearing was unreasonable because the magistrate judge was not neutral and

detached where the magistrate judge also issued the search warrant. (Doc. 1 at 4-13).

In Ground Two, Petitioner asserts that this Court lacked jurisdiction under Article III of the Constitution and was not the appropriate venue. (*Id*. at 14). To support this ground, Petitioner argues the indictment was defective, the grand jury was not informed of the essential elements and facts of the offenses, the indictment did not preclude future prosecution for the same conduct in violation of the right against double jeopardy, and the prosecutor improperly instructed the grand jury. (*Id.* at 15-20).

Next, Petitioner alleges in Ground Three that his guilty plea was not knowing and voluntary because he was coerced/misinformed by counsel about the evidence and sentence he would receive by entering the plea, the plea agreement and factual basis caused a fatal variance and constructive amendment to the indictment, and the Court failed to properly inform him of the nature of the charges to which he was pleading guilty and failed to ensure a sufficient factual basis existed before adjudicating him guilty. (*Id.* at 21-28).

In Ground Four, Petitioner contends that the Government breached the plea agreement by investigating the murder-for-hire plot against the child victim while engaging in plea negotiations to manipulate the sentence and by misleading the Court regarding his substantial assistance in the special counsel investigation. (*Id.* at 29-31). Petitioner further maintains in Ground Five that the sentencing procedure violated his constitutional rights because (1) the Government failed to disclose the

federal agents' disciplinary records and the cooperating witness' record and presented fabricated evidence like screenshots, (2) the Court violated *Alleyne v. United States,* 570 U.S. 99 (2013)[3] and improperly increased Petitioner's offense level because (a) the offense involved material that portrayed sadistic and masochistic conduct, (b) a computer or interactive computer service was used to solicit participation with a minor in sexually explicit conduct, and (c) the offense involved the commission of a sexual act or sexual abuse, (3) the Court imposed a term of supervised release after the completion of Petitioner's life sentence, and (4) the Court ruled on enhancements without providing the defense an opportunity to present arguments in opposition. (*Id.* at 33-38).

Petitioner asserts in Ground Six that the Government engaged in prosecutorial misconduct. (*Id.* at 39). To support this ground, Petitioner argues that the prosecutor presented perjured testimony at the probable cause hearing, improperly instructed the grand jury, engaged in misconduct in relation to the plea, improperly engaged in an unauthorized proffer, opposed the plea withdrawal, falsely advised the Court about the substantial assistance, and presented perjured testimony at sentencing. (*Id.*)

Finally, in Ground Seven, Petitioner contends that his convictions for Counts Two and Three are unconstitutional as applied and he is actually innocent of the offenses. (*Id.* at 40). According to Petitioner, there can be no violation of 18 U.S.C.

---

[3] "*Alleyne* held that any fact supporting an enhanced mandatory minimum sentence must be (1) alleged in the indictment and (2) admitted by the defendant or found by a jury beyond a reasonable doubt." *United States v. Roemmele*, 589 F. App'x 470, 471 (11th Cir. 2014).

§ 2251(e) absent a prior conviction for violation of § 2251(a)-(d), and there is no evidence to support the 18 U.S.C. § 2422(b) charge without the fabricated screenshots. (*Id.*).

Respondent argues that these grounds are procedurally barred from review. (Doc. 17 at 9-14). "A federal criminal defendant who fails to preserve a claim by objecting at trial or raising it on direct appeal is procedurally barred from raising the claim in a § 2255 motion, absent a showing of cause and prejudice or a fundamental miscarriage of justice." *Rivers v. United States*, 476 F. App'x 848, 849 (11th Cir. 2012). Likewise, "[i]t is long settled that a prisoner is procedurally barred from raising arguments in a motion to vacate his sentence, 28 U.S.C. § 2255, that he already raised and that [the appellate court] rejected in his direct appeal." *Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014); *see also United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000) ("Once a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255." (internal quotation marks omitted)); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994) ("[P]rior disposition of a ground of error on direct appeal, in most cases, precludes further review in a subsequent collateral proceeding.").

To demonstrate cause for failing to raise a claim in an earlier proceeding, a petitioner must establish "'some external impediment preventing counsel from constructing or raising the claim.'" *High v. Head*, 209 F.3d 1257, 1262-63 (11th Cir.

2000) (quoting *McCleskey v. Zant*, 499 U.S. 467, 497 (1991)). Cause may be demonstrated by attorney error that constitutes ineffective assistance of counsel. *Coleman v. Thompson*, 501 U.S. 722, 753–54 (1991), *holding modified by Martinez v. Ryan*, 566 U.S. 1 (2012). To show "prejudice," a petitioner must establish that there is "at least a reasonable probability that the result of the proceeding would have been different." *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). A petitioner may demonstrate application of the fundamental miscarriage of justice exception by demonstrating "actual innocence." *McKay v. United States*, 657 F.3d 1190, 1196 (11th Cir. 2011). "'[A]ctual innocence' means *factual* innocence, not mere legal insufficiency." *Id.* at 1197 (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)) (emphasis in original).

Petitioner admits that he did not raise Grounds One, Two, Four, and Five through Seven in this Court or on direct appeal. (Doc. 1 at 4, 15, 21, 29, 32-33, 39-40). Further, as asserted in Ground Three, Petitioner argued in this Court and on direct appeal that his plea was not voluntary, and this argument was rejected. *See* Criminal Case, Doc. Nos. 99 at 3-22, 112. Thus, these grounds are procedurally barred absent application of an exception to the procedural default bar.

To overcome the bar, Petitioner complains as to Grounds One and Seven that trial counsel failed to raise the issues. (*Id.* at 4, 40). With respect to Grounds Two, Three, Four, Five, Six, and Seven, Petitioner contends that appellate counsel failed to raise the issues. (*Id.* at 21, 15, 29, 32-33, 39-40). Finally, Petitioner asserts in

Ground Seven that he is actually innocent. The Court will address whether Petitioner has established cause and prejudice or a fundamental miscarriage of justice to overcome the default of these grounds.[4]

### 1. Ground One

On May 14, 2018, the Government filed a Criminal Complaint, and Magistrate Judge Gregory Kelly conducted a preliminary hearing. (Criminal Case, Doc. Nos. 1, 42). To support the Criminal Complaint, Special Agent Hyre attested as follows. The Federal Bureau of Investigation ("FBI") learned from the victim that in July 2017, when she was sixteen years of age, she was contacted by someone named "Devin" via an internet messaging application regarding a modeling advertisement she posted online. (*Id.* at 4-5). Devin represented himself to be a modeling agent. (*Id.* at 6). According to the victim, Devin persuaded the victim to send him multiple nude photographs via the internet by posting the photos on MEGA, a cloud storage account, to which she gave Devin the password. (*Id.* at 5-7).

After her contact with Devin, the victim posted another online advertisement seeking a modeling opportunity, and someone who identified himself as "Nick Cuban" contacted her via the same internet messaging application. (*Id.*). Nick

---

[4] In Ground Eight, Petitioner relies on the issues asserted in Grounds One through Seven to show that his trial and appellate counsel rendered ineffective assistance. Consequently, in determining if Petitioner has shown cause and prejudice to excuse the procedural default of Grounds One through Seven, the Court will consider if Petitioner has demonstrated that trial or appellate counsel were ineffective for failing to raise these issues as alleged in Ground Eight.

maintained he knew Devin and convinced the victim to send him multiple nude photographs via the internet. (*Id.*). The victim indicated that Nick later sent her a cellular phone via FedEx so she could take and send him nude photos and videos. (*Id.* at 8-9). The victim provided law enforcement with the FedEx envelope in which the phone was sent, and the return address on the envelope was Petitioner's residence in California. (*Id.* at 9).

Between September 2017 and April 2018, Nick traveled to Orlando five times to visit the victim. Petitioner, pretending to be Nick, rented hotel rooms to which he took the victim and gave her alcohol and drugs and recorded videos of him sexually assaulting her. (*Id.* at 5-8). The victim said that Nick had multiple cameras and at least three smart phones to record their sexual activity. (*Id.* at 8). FBI agents showed the victim, who previously had provided them with a description of Nick, Petitioner's driver's license, which she then identified as the person pretending to be Nick. (*Id.* at 9).

After her contact with Nick, the victim posted another online advertisement seeking a modeling opportunity. (*Id.* at 8). Someone who identified himself as "Roger" contacted the victim via the internet and persuaded her to send him nude photographs via the internet on multiple occasions. (*Id.* at 5-6). Roger threatened to disseminate the nude photographs on the "dark web" if she did not continue to send him nude photos. (*Id.* at 6). The victim spoke with Devin on the phone and either Nick or Roger, and she believed they were the same person based on the similarity

of their voices. (*Id*.).

On May 2, 2018, FBI agents went to the Sheraton Suites that the victim identified as the hotel where she and Nick stayed when he came to Orlando on March 30 through April 1, 2018. (*Id.* at 8). The victim said she and Nick stayed in room 129, and Sheraton Suites confirmed that Petitioner was the person who checked in and out of room 129. (*Id*.). Sheraton Suites also had surveillance photos from April 1, 2018, that showed Petitioner and the victim at the hotel. (*Id*.) FBI agents obtained records from United Airlines showing that Petitioner traveled from California to Orlando, Florida on March 30, 2018. (*Id.* at 9).

FBI agents examined the smartphone Nick sent the victim to confirm that the victim used various internet applications to communicate with Devin, Nick, and Roger. (*Id.* at 10). They also located a conversation where the victim told Nick she was sixteen and sexually explicit conversations between the victim and Nick one of which was a discussion on February 19, 2018, where Nick referenced a prior sexual encounter with the victim. (*Id*.). The conversations also contained images of the victim's vagina that she sent to Nick via the internet. (*Id*.).

On May 7, 2018, the victim notified the FBI that Nick contacted her via Google Hangouts, and they instructed the victim to tell him that her mother had taken away all her electronic media. (*Id*.). That night, posing as the victim, Special Agent Kevin Kaufman messaged Petitioner (Nick) via Google Hangouts, and they exchanged a series of communications (*Id*. at 11). During the conversation,

Petitioner maintained that Roger was extorting him and asked the victim for "half a day and a night just like old times" to help him. (*Id*. at 11-12). The victim advised Special Agent Kaufman that she believed that Petitioner meant he wanted to travel to Florida to produce more sex videos with her, and Special Agent Kaufman, acting as the victim, agreed to meet Petitioner that weekend. (*Id*. at 12-13).

On May 8, 2018, Special Agent Kaufman continued chatting with Petitioner, who asked Special Agent Kaufman who was pretending to be the victim, if she was available that weekend and told her that he planned to get video and "good shots" and to bring her lingerie and the outfits she wore for her prior shoots. (*Id*. at 13). On May 9, 2018, the victim called Petitioner, who was posing as Nick, and the conversation was recorded. (*Id*.). During the conversation, Petitioner asked the victim why she left the Kik chat group that she, Nick, Devin, and Roger were part of, and the victim said she did so because Roger kept threatening her. (*Id*. at 14). Petitioner told the victim that Roger had posted pictures of her and him on the internet and told her he was coming that weekend and had a plan to meet with Roger and convince him to remove their images from the internet. (*Id.* at 14-15). Petitioner further confirmed that he and the victim would be taking pictures and videos. (*Id*. at 15). The victim asked Petitioner if they would use contraception when they filmed the videos, and Petitioner responded he did not know yet. (*Id*. at 15-16).

On May 9, 2018, Petitioner and Special Agent Kaufman, acting as the victim, messaged via Google Hangouts. (*Id.* at 16). Special Agent Kaufman expressed

concern about getting pregnant, and Petitioner responded that she would not as he would take care of it. (*Id.* at 16-17). Petitioner said he wanted everything to be like it had been in prior sessions, and Special Agent Kaufman expressed concern about getting pregnant because they had not used condoms before. (*Id.* at 17). Special Agent Kaufman also said she (the victim) would not have anal sex. (*Id.*). In response, Petitioner assured the victim that they would not do anal and indicated that he just wanted to get what they got last time. (*Id.*).

On May 12, 2018, Special Agents Hyre and Kaufman saw Petitioner exit a gate at the Orlando International Airport from a United Airlines flight from San Francisco, California. (*Id.* at 17-18). The agents advised Petitioner of his *Miranda* rights, transported him to the Seminole County Jail, and inventoried the items in his possession, which included five smartphones, two cameras, a video camera, a camera stand, a MacBook Pro, handcuffs, lubricant, blindfold mask, and male performance enhancement tablets. (*Id.* at 18-20). At the preliminary hearing, Special Agent Hyre testified consistently with his attestations in support of the Criminal Complaint. *See* Criminal Case, Doc. 42.

Petitioner complains that Special Agent Hyre and the agent who obtained the search warrant failed to include specific details in their affidavits regarding *inter alia* the various internet messaging applications, accounts, mobile phones, emails, and IP addresses utilized during the offenses. (Doc. 1 at 4-14). According to Petitioner, these omissions were false statements, and their absence precluded a finding of

probable cause and the issuance of a search warrant. (*Id.*). Contrary to Petitioner's argument, the fact that this information was not included in the agents' affidavits did not preclude a finding of probable cause or the issuance of a search warrant. Based on Special Agent Hyre's attestations and the evidence presented at the preliminary hearing, ample evidence supported Magistrate Judge Kelly's finding that probable cause existed that Petitioner committed the offenses charged in the Criminal Complaint. *See* Criminal Case, Doc. 4. Likewise, probable cause existed for Petitioner's arrest, and the evidence supported the issuance of a search warrant. Further, simply because the agents did not include the "omitted" information does not establish that they gave false or misleading information.

Petitioner also has not shown that Magistrate Judge Kelly failed to remain neutral at the preliminary hearing. Magistrate Judge Kelly determined that probable cause existed after the Government presented evidence and Petitioner had an opportunity to cross-examine the witness, make arguments, and call witnesses. Review of the preliminary hearing transcript and evidence reflect that Magistrate Judge Kelly was a neutral fact finder.

Finally, assuming the agents failed to obtain a warrant for Petitioner's cell site data,[5] ample other evidence supported the charges against Petitioner as detailed *supra*. Consequently, Petitioner has not demonstrated trial counsel was deficient for

---

[5] It is not clear from the record that the Government obtained Petitioner's cell site data or relied on this information.

failing to (1) file a motion to suppress, (2) argue that the Government did not obtain a warrant for Petitioner's cellular site location and lacked probable cause to arrest Petitioner, and (3) challenge the criminal complaint and probable cause hearing and magistrate judge's lack of neutrality. Further, Petitioner has not established that a reasonable probability exists that the outcome of the proceeding would have been different had counsel done so. Thus, Petitioner has not established cause or prejudice to overcome his procedural default of Ground One, and it will be denied.

2. *Ground Two*

Petitioner has not established either deficient performance or prejudice based on trial or appellate counsel's failure to argue that (1) the Court lacked jurisdiction, (2) the venue was improper, (3) the indictment was defective, (4) the grand jury was not informed of the essential elements and facts of the offenses, and (5) the prosecutor improperly instructed the grand jury.

The Grand Jury charged Petitioner by indictment with receipt of child pornography (Count One) in violation of 18 U.S.C. § 2252A(a)(2) and (b)(1), production and attempted production of child pornography (Count Two) in violation of 18 U.S.C. § 2251(a) and (e), and two counts of actual and attempted sexual enticement of a minor (respectively Counts Three and Four) in violation of 18 U.S.C. § 2422(b). (Criminal Case, Doc. 8). The offenses were alleged to have occurred in the Middle District of Florida. (*Id.*). The district courts of the United States have original jurisdiction "of all offenses against the laws of the United States." 18 U.S.C.

§ 3231. Moreover, "the government must prosecute an offense in a district where the offense was committed." Fed. R. Crim. P. 18. Thus, the Court had jurisdiction over Petitioner's case, and venue was proper here.

Furthermore,

> [a]n indictment is considered legally sufficient if it: "(1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense." *United States v. Woodruff*, 296 F.3d 1041, 1046 (11th Cir. 2002).

*United States v. Jordan*, 582 F.3d 1239, 1245 (11th Cir. 2009). Generally, the indictment is sufficient where it "set[s] forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'" *Hamling v. United States*, 418 U.S. 87, 117 (1974) (quoting *United States v. Carll*, 105 U.S. 611, 612 (1882)).

Here, the indictment cited and tracked the language of the statutes, unambiguously notified Petitioner of the charges against him, and identified the dates and location of the offenses. (Criminal Case, Doc. 8). Consequently, the indictment was legally sufficient.

Finally, Petitioner has not established that the grand jury was not informed of the essential elements and facts of the offenses. Nor has he shown that the prosecutor improperly or falsely instructed the grand jury. Trial and appellate counsel,

therefore, were not ineffective for failing to raise these non-meritorious issues, and Petitioner has not shown cause and prejudice to overcome the procedural default of Ground Two.

### 3. *Ground Three*

Next, Petitioner argues that his plea was not voluntary because trial counsel misled him regarding the evidence against him, told him the only safe option was to plead guilty and offer substantial assistance to the special counsel's investigation, advised him the Court would not sentence him to incarceration, and told him that the terms of the plea agreement, including the factual basis, were not important. (Doc. 1 at 22). Petitioner further complains that the Court failed to ensure he understood the nature of the charges to which he was pleading guilty and failed to ensure a sufficient factual basis existed before adjudicating him guilty. (*Id.* at 23-27). Finally, Petitioner contends that the plea agreement and factual basis caused a fatal variance and constructive amendment to the indictment. (*Id.* at 28).

Initially, the Court notes that Petitioner previously argued that (1) counsel improperly informed him about the sentence he would receive and coerced him to enter the plea, (2) there was not a sufficient factual basis for the plea because the Government did not have the videos Petitioner made, and (3) he did not understand the nature of the charges to which he pleaded guilty. *See* Criminal Case, Doc. Nos. 75, 99 at 4, 18-21. The Court concluded that Petitioner's contentions were refuted by his sworn statements at the plea colloquy and that a sufficient factual basis existed

for the plea. (Criminal Case, Doc. 99 at 7-9, 21-22). Thus, Petitioner's allegations regarding trial counsel's purported deficiencies and the sufficiency of the factual basis have been considered and denied.

Nevertheless, the Court reiterates that the factual basis contained in the plea agreement supported the charges. Further, at the plea hearing, the Court ensured that Petitioner understood (1) the charges to which he was pleading, (2) the penalties he faced by entering the plea, (3) that the sentence would not be determined until sentencing, and (4) Petitioner could not challenge the Government's decision whether to request sentencing leniency based on substantial assistance. (Criminal Case, Doc. 64). In addition, contrary to Petitioner's contention otherwise, prior to entering the plea, Petitioner knew the evidence against him as evidenced by his testimony at the sentencing hearing that he reviewed the evidence received by his counsel in discovery. *See* Criminal Case, Doc. 99 at 114-15. In sum, the Court concludes that a sufficient factual basis existed for the plea, Petitioner understood the nature of the charges to which he was pleading and the minimum and maximum sentences he could receive, and trial counsel properly advised Petitioner in relation to the plea.

Moreover, a reasonable probability does not exist that Petitioner would have proceeded to trial but for counsel's purported deficiencies given the evidence of Petitioner's guilt, which included the victim's testimony; the chat messages of their interactions; the FBI agents' communications, acting as the victim, with Petitioner;

the recorded conversation between Petitioner and the victim; the footage of the victim and Petitioner at the Sheraton Suites; and Petitioner's arrival in Orlando on the agreed upon date with numerous items to perpetuate the sexual assault and recording of the assault.

Finally, Petitioner has not established that there was a constructive amendment of the indictment. A constructive amendment of an indictment occurs "'when the essential elements of the offense contained in the indictment are altered to broaden the possible bases for conviction beyond what is contained in the indictment.'" *United States v. Mozie*, 752 F.3d 1271, 1283 (11th Cir. 2014) (quoting *United States v. Dortch*, 696 F.3d 1104, 1112 (11th Cir. 2012)). The elements of the offenses contained in the indictment were not broadened by the plea agreement. Considering Petitioner's allegations, the Court concludes that he has not established that either trial or appellate counsel was ineffective for failing to raise these arguments. Thus, Petitioner has not shown cause or prejudice to overcome his procedural default of Ground Three, and it will be denied.

### 4. Ground Four

Petitioner next contends that the Government breached the plea agreement by investigating the murder-for-hire plot against the child victim while engaging in plea negotiations to manipulate the sentence and by misleading the Court regarding his substantial assistance in the special counsel investigation. (Doc. 1 at 29-31).

Petitioner's contentions are refuted by the plea agreement, Petitioner's

representations at the plea hearing, and the Government's representations at sentencing hearing. Nothing in the plea agreement precluded the Government from investigating additional offenses committed by Petitioner. The plea agreement only provided that the Government agreed not to charge Petitioner with additional federal offenses occurring between July 2017 and May 12, 2018, that were known to the Government at the time of the plea. (Criminal Case, Doc. 38 at 4). Petitioner's murder-for-hire plot occurred in approximately September 2018. *See* Criminal Case, Doc. 99 at 81-82. The Government also never charged Petitioner with the murder-for-hire plot. Rather, it chose to present evidence of the plot at sentencing, which was not precluded by the plea agreement.

Further, at sentencing, the Government told the Court with respect to Petitioner's assistance, that it met with Petitioner, asked him to unlock all his devices recovered in the investigation, and Petitioner refused, concluding the proffer. (Criminal Case, Doc. 99 at 157-58). The plea agreement did not require the Government to request a sentence reduction for any assistance provided by Petitioner, whether in relation to the special counsel investigation or otherwise. *See* Criminal Case, Doc. 38 at 5-6. Further, when he entered the plea, Petitioner affirmed he understood that it was in the Government's discretion to seek leniency at sentencing based on substantial assistance and that this decision could not be challenged. (Criminal Case, Doc. 64 at 9). There is no indication that the Government misled the Court regarding Petitioner's substantial assistance in the

special counsel investigation in contravention of the plea agreement. Petitioner, therefore, has not demonstrated that the Government breached the plea agreement.

For these reasons, Petitioner has not shown that trial or appellate counsel was deficient for failing to argue that the Government breached the plea agreement. In addition, Petitioner has not established a reasonable probability that the outcome of the proceeding would have been different had counsel raised the issue. Consequently, Petitioner has not shown cause or prejudice to overcome his procedural default of Ground Four, and it will be denied.

   5.  *Grounds Five and Six*

In Ground Five, Petitioner complains that the sentencing hearing violated his constitutional rights because (1) the Government failed to disclose the federal agents' disciplinary records and the cooperating witness' record and presented fabricated evidence like screenshots in violation of *Brady*[6] and *Giglio*,[7] (2) the Court violated *Alleyne* and improperly increased Petitioner's offense level based on the

---

[6]*Brady v. Maryland*, 373 U.S. 83 (1963). Pursuant to *Brady*, a new trial is warranted if the defendant shows that: "(1) the government possessed evidence favorable to the defendant; (2) the defendant does not possess the evidence and could not obtain the evidence with any reasonable diligence; (3) the prosecution suppressed the favorable evidence; and (4) had the evidence been disclosed to the defendant, there is a reasonable probability that the outcome would have been different." *United States v. Robles*, 283 F. App'x 726, 737 (11th Cir. 2008) (citing *United States v. Vallejo*, 297 F.3d 1154, 1164 (11th Cir. 2002)).

[7]*Giglio v. United States*, 405 U.S. 150 (1972). A violation of *Giglio* "occurs when the prosecution solicits or fails to correct false or perjured testimony and 'the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury.'" *Id.* at 1302 (quoting *Giglio,* 405 U.S. at 153–54). To prevail on a *Giglio* claim, therefore, "a petitioner must prove (1) that the prosecution used or failed to correct testimony that he knew or should have known was false and (2) materiality—that there is any reasonable likelihood the false testimony could have affected the judgment." *Id.*

following findings (a) the offense involved material that portrayed sadistic and masochistic conduct, (b) a computer or interactive computer service was used to solicit participation with a minor in sexually explicit conduct, and (c) the offense involved the commission of a sexual act or sexual abuse, (3) the Court imposed a term of supervised release after the completion of Petitioner's life sentence, and (4) the Court ruled on enhancements without providing the defense an opportunity to present arguments in opposition. (Doc. 1 at 33-38).

Similarly, Petitioner asserts in Ground Six that the Government engaged in prosecutorial misconduct. (*Id.* at 39). To support this ground, Petitioner argues that the prosecutor presented perjured testimony at the probable cause hearing, improperly instructed the grand jury, engaged in misconduct in relation to the plea, improperly engaged in an unauthorized proffer, opposed the plea withdrawal, falsely advised the Court about the substantial assistance, and presented perjured testimony at sentencing.[8] (*Id.*).

Petitioner has not demonstrated that the prosecution failed to disclose any favorable evidence or presented any fabricated or false evidence. "[M]ere speculation or allegations that the prosecution possesses exculpatory information will not suffice to prove 'materiality.'" *United States v. Jordan*, 316 F.3d 1215, 1252 n. 81 (11th Cir. 2003). Furthermore, even if the Government failed

---

[8] To the extent Petitioner contends in Ground Six that the prosecution improperly instructed the jury, engaged in misconduct related to the plea, engaged in an unauthorized proffer, and falsely advised the Court about his substantial assistance, the Court considered and rejected these arguments in Grounds Two and Four.

to disclose the federal agents' disciplinary records and the cooperating witness' record, a finding not made by the Court, there is no reasonable probability that such evidence would have resulted in a different outcome.

Next, *Alleyne* is not applicable in this case. After *Alleyne*, the Eleventh Circuit held that "a district court may continue to make guidelines calculations based upon judicial fact findings and may enhance a sentence—*so long as its findings do not increase the statutory maximum or minimum authorized by facts determined in a guilty plea or jury verdict.*" *United States v. Charles*, 757 F.3d 1222, 1225 (11th Cir. 2014) (emphasis added). The minimum and maximum sentences for Count Two were five years and thirty years and for Count Three were ten years and life. *See* 18 U.S.C. §§ 2251(e), 2422(b). Because the offense level increases found by the Court only affected Petitioner's "guidelines calculation and not his statutory mandatory minimum or maximum, [Petitioner's] reliance on *Alleyne* is misplaced." *Charles*, 757 F.3d at 1225–26.

Likewise, the Court properly increased Petitioner's offense level because (a) the offense involved material that portrayed sadistic and masochistic conduct, (b) a computer or interactive computer service was used to solicit participation with a minor in sexually explicit conduct, and (c) the offense involved the commission of a sexual act or sexual abuse. Evidence was presented that Petitioner used handcuffs, a blindfold, and a dildo when sexually assaulting the victim, used smartphones and computers and various internet applications to message and the victim and obtain

nude photographs of her and to set up meetings with her to sexually assault and record their encounters, and sexually assaulted the victim on multiple occasions. *See* Criminal Case, Doc. 99 at 26-70, 79, 142-43. This evidence supported application of the sadistic and masochistic conduct, use of computer, and sexual act enhancements. *See, e.g., United States v. Caro*, 309 F.3d 1348 (11th Cir. 2002) (affirming application of sadistic conduct and use of computer enhancements).

Further, contrary to Petitioner's argument otherwise, the Court provided the defense ample opportunity at sentencing to challenge the guidelines calculation, make objections, and argue what the appropriate sentence should be. *See* Criminal Case, Doc. 99. Counsel in fact objected to multiple facts and enhancements in the Presentence Investigation Report. (*Id.*). Finally, the imposition of a life sentence did not prohibit the Court from imposing a term of supervised release. *See* U.S.S.G. § 5D1.2(b)(2). In sum, the Court properly calculated Petitioner's sentencing guidelines, Petitioner's sentence is proper, and there was no prosecutorial misconduct. Neither trial nor appellate counsel was ineffective for failing to raise these issues, and prejudice did not result from their failure to do so. Accordingly, Petitioner has not shown cause or prejudice to overcome his procedural default of Grounds Five and Six, and these grounds will be denied.

6. *Ground Seven*

Petitioner contends that his convictions for Counts Two and Three are unconstitutional as applied and he is actually innocent of the offenses. (Doc. 1 at

40). According to Petitioner, he is innocent of Count Two because the Government failed to produce a visual depiction of the victim showing sexually explicit conduct. (*Id.*).  He also argues that there can be no violation of 18 U.S.C. § 2251(e) absent a prior conviction for violation of § 2251(a)-(d), and there is no evidence to support the 18 U.S.C. § 2422(b) conviction except for the fabricated screenshots. (*Id.*)

As discussed above, Petitioner has not demonstrated that the screenshots of the messages between him and the victim were fabricated. Moreover, Petitioner and Special Agent Kaufman, acting as the victim, exchanged messages corroborating the veracity of the victim's representations and the screenshots. Further, Special Agent Hyre observed pictures of the victim's vagina that she sent to Petitioner when they messaged. (Criminal Case, Doc. 99 at 58-59). As described in the factual basis in the plea agreement and admitted by Petitioner at the plea hearing, ample evidence supports Petitioner's guilt of Counts Two and Three. *See* Criminal Case, Doc. Nos. 38 at 27-32, 64 at 13-14.  Finally, § 2251(e) does not require there to be a prior conviction of § 2251 before there can be a violation of the statute. Rather, § 2251(e) increases the punishment for a violation of § 2251 if the defendant had prior convictions under *inter alia* § 2251. Thus, Petitioner has not demonstrated that his convictions for Counts Two and Three are unconstitutional as applied or that he is actually innocent. Consequently, trial and appellate counsel were not deficient for failing to raise these issues, and prejudice did not result from their failure to do so. Accordingly, Petitioner has not demonstrated cause or prejudice or a miscarriage of

justice to overcome his procedural default of Ground Seven, and it will be denied.

In sum, Petitioner has not shown that trial or appellate counsel was ineffective for failing to raise any of the issues presented in Grounds One through Seven. Further, Petitioner has not demonstrated that trial counsel rendered ineffective assistance in relation to the plea or that his plea was involuntary. Consequently, Grounds One through Seven are procedurally barred from review.

### 7. *Ground Eight*

Petitioner asserts counsel was ineffective for failing to raise the issues alleged in Grounds One through Seven. (Doc. 1 at 41). Petitioner further complains that the cumulative effect of trial and appellate counsels' deficient performance rendered his proceeding fundamentally unfair. (*Id.*). In addition, Petitioner argues that counsel rendered ineffective assistance by refusing to file a motion for new trial and a motion to arrest judgment under Federal Rules of Criminal Procedure 33 and 34. (*Id.*).

As discussed *supra*, Petitioner has not established that counsel was deficient for failing to raise the issues asserted in Grounds One through Seven or that prejudice resulted from counsels' failure to do so. Likewise, trial counsel had no legal basis on which to move for a new trial or seek the arrest of judgment. *See* Fed. R. Crim. P. 33(a) ("Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."); *see also* Fed. R. Crim. P. 34(a) ("Upon the defendant's motion or on its own, the court must arrest judgment if the court does not have jurisdiction of the charged offense."). Counsel, therefore,

was not deficient for refusing to file motions under Rule 33 and 34, and prejudice did not result from counsel's failure to do so. Because there was no deficient performance or prejudice in relation to any of Petitioner's claims, there is no error to cumulate. Consequently, Petitioner has not demonstrated that the cumulative effect of counsel's performance resulted in ineffective assistance. *See e.g., Morales v. Sec'y, Fla. Dep't Corr.*, 710 F. App'x 362, 365 (11th Cir. 2017) ("[W]e have rejected all of the claims of error before us. There are, therefore, no errors to cumulate."). Accordingly, Ground Eight will be denied.

Any of Petitioner's allegations not specifically addressed have been considered, are without merit, and are denied.

## IV. CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED** as follows:

1. Petitioner's Motion to Vacate, Set Aside, or Correct Sentence (Doc. 1) is **DENIED,** and this case is **DISMISSED** with prejudice**.**

2. The Clerk of the Court shall enter judgment accordingly and is directed to close this case.

3. The Clerk of the Court is directed to file a copy of this Order in criminal case number 6:18-cr-131-CEM-LHP and to terminate the motions (Criminal Case, Doc. 117) pending in that case.

4. This Court should grant an application for certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a

constitutional right." <u>28 U.S.C. § 2253(c)(2)</u>. Petitioner has failed to make a substantial showing of the denial of a constitutional right.[9]

Accordingly, a Certificate of Appealability is **DENIED** in this case.

**DONE** and **ORDERED** in Orlando, Florida on July 5, 2023.



CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party

---

[9] "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." *Rules Governing Section 2255 Proceedings for the United States District Courts*, Rule 11(a).